[Crim. No. 5534.   In Bank.   Dec. 17, 1953.]

THE PEOPLE, Respondent, v. JAMES FRANCIS SILVA, Appellant.

Jerome A. Duffy and Morton R. Colvin for Appellant.

Edmund G. Brown, Attorney General, and Clarence A. Linn, Assistant Attorney General, for Respondent.

EDMONDS, J.—While confined in San Quentin Prison under a sentence of life imprisonment, James Francis Silva stabbed and seriously wounded Kenneth King, another inmate. A jury found Silva guilty of a violation of section 4500 of the Penal Code* and concluded that he was sane at the time the offense was committed. The statutory appeal (Pen. Code, § 1239b) is from the judgment imposing the death penalty and from an order denying a motion for a new trial.

On the Monday morning preceeding the stabbing, Silva and King were students in a prison bookkeeping class. Silva was having difficulty in the use of an adding machine and suddenly became angry when King intervened and attempted to demonstrate its operation. A quarrel began and was con-

---

*"§ 4500. Every person undergoing a life sentence in a State prison of this State, who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury, is punishable with death."

tinued during a recess period a few minutes later. At that
time a fist fight occurred, in which Silva's nose was broken.
The fight stopped quickly, and Silva apologized for having
lost his temper. King returned to the classroom and Silva
went to the prison hospital for medical treatment.

After receiving medical attention, Silva obtained a pass
which enabled him to go into the prison yard, where he had
secreted a knife. Concealing it on his person, he began look-
ing for King but did not find him on that afternoon. At
noontime on the following day he observed King, but a prison
custodial officer was nearby. Later Silva searched for King
in the prison yard and the cell blocks, but he was unsuccessful
in locating him until they went to class the next afternoon.

In the classroom, Silva was given a seat about 6 or 8 feet
to the rear of the chair occupied by King. He waited until
the class was in session, and then walked to the pencil
sharpener. The room was quiet and all of the occupants
were busily engaged in their work. Silva stepped behind
King, withdrew the knife from his belt, and plunged it into
King's back. An exclamation by King caused the others in
the room to look up as Silva was attempting to withdraw the
knife. Silva then walked swiftly from the room and there-
after surrendered to prison authorities.

Signed statements in accordance with these facts were
given by Silva to prison officials and to the district attorney,
and at the trial he took the stand and gave a detailed account
of the stabbing. He stated that immediately after the fight
on Monday morning, he decided to kill King. His decision
did not stem from a fit of temper, he explained, but from a
"cool, hateful anger" toward King and a desire for revenge.
He would have attacked King sooner, he declared, had there
been an opportunity to do so at a time when he might have
avoided detection. According to his testimony, his apprehen-
sion resulted from King's exclamation and his inability to
withdraw the knife from the wound, but realizing his failure
to avoid detection, he decided that the sole remaining course
was to confess the crime and accept his punishment. A trial
was unnecessary, he said, and the trial judge and his counsel
should have permitted him to enter a plea of guilty.

The sufficiency of the evidence to support the judgment is
not challenged. Silva's only contention is that the prosecut-
ing attorney was guilty of prejudicial misconduct in offering
certain evidence and in his remarks to the jury.

■ During the course of King's testimony concerning the stabbing, he removed his shirt and exhibited scars on his back which resulted from the knife wound and surgical treatment. Also introduced in evidence was a photograph taken immediately after the stabbing which showed the knife protruding from King's back. These items of real evidence were relevant to establish the corpus delicti.

■ Other evidence included X-ray photographs of the wound and the testimony of the surgeon who treated King, which tended to establish the depth of the knife's penetration. Over objection of counsel for Silva, the evidence was received for the limited purpose of showing malice. It was not error to do so.

■ An essential element of the offense stated in section 4500 of the Penal Code is that the assault be committed with malice aforethought. ■ As used in section 4500, that term denotes *"purpose* and *design* in contradistinction to accident and mischance. . . . [I]t is used to denote the purpose and design of the assaulting party." (*People* v. *McNabb*, 3 Cal.2d 441, 456 [45 P.2d 334].) ■ The word "malice" imports "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (Pen. Code, § 7, subd. 4.) The extent and location of a knife wound are pertinent to a determination of the intent with which it was inflicted.

The relevancy of none of these items of evidence is challenged by Silva. ■ He asserts, however, that the "continuous and repeated reference to the wound was wholly uncalled for and unnecessary in view of the evidence the District Attorney had at his command." According to his contention, the "sole and only purpose of such conduct was to inflame the jury and appeal to their emotions."

A similar contention was made in *People* v. *Dunn*, 29 Cal.2d 654 [177 P.2d 553], in which the trial court received in evidence photographs of the body of the victim of a homicide. It was claimed that the pictures could serve only to identify the body, a question which was not in dispute, and the only purpose of the prosecution in offering them was to prejudice the jury. This court said: "The prosecution was not required, merely because identification was unquestioned, to withhold cumulative and corroborative evidence otherwise admissible. Defendant was permitted to introduce everything which he felt might tend to favor his cause with the jury, and the prosecution could not rightly be excluded from showing the details

of the crime merely because they might have a tendency to influence the jury against the defendant.'' (Pp. 659-660.)

■ Silva assigns as prejudicial misconduct a reference by the prosecuting attorney in his opening statement and in his closing argument to attempts by Silva to obtain garlic to rub on the knife blade. Silva stated that his purpose in seeking the substance was that ''Garlic causes gangrene. If I had missed the heart, even a slight cut, he would have went.'' Counsel for Silva asserts that this reference was improper because ''there is no proof that garlic rubbed on the blade of a knife will cause a more serious wound.''

The prosecuting attorney confined his remarks in this connection to the issue of malice aforethought. ■ Evidence that for the two days preceding the assault upon King, Silva searched for a substance *he believed* would produce a more serious wound certainly was relevant to the issue of the purpose and intent of Silva at the time he assaulted King. ■ Evidence, properly admitted, fairly may be commented upon by the prosecuting attorney. (*People* v. *Sturman,* 56 Cal.App.2d 173, 182 [132 P.2d 504].) This evidence was presented by Silva's own testimony and by similar testimony of witnesses for the prosecution admitted without objection. Furthermore, no objection was made to the district attorney's comments.

■ Silva also charges that remarks of the district attorney impugned the integrity of his counsel and constituted misconduct. He objects to statements made in the closing argument of that part of the trial in which the issue of sanity was determined to the effect that ''there are quacks in every profession, and if [Silva] had enough money he could go out and hire a quack.'' This remark was in response to argument by Silva's counsel that he had insufficient funds to hire highly paid expert witnesses, which he might do if the defendant were ''some rich playboy.'' When his argument was challenged, the district attorney immediately denied any intention to question the character of defense counsel, and the jurors were properly admonished to disregard any implications of misconduct. The trial judge observed that the comment probably was in response to Silva's argument that he had insufficient funds to engage other medical witnesses.

■ Another statement of the district attorney, made in his closing argument on the trial of the issue presented by the plea of not guilty, was that in using psychiatric testimony, Silva's attorney was ''trying to . . . upset our criminal system and criminal law. He is trying to convince you that, because of

some hypothetical idea that the unconscious mind controls everything we do, that therefore the guilty man should escape punishment.'' In overruling an objection to this remark, the trial judge said: ''I don't think he meant at all that you are prone to assist guilty people to escape punishment. He is merely arguing, he is trying to argue that this man is guilty and you are trying to argue he is not. The jury appreciates it is argument and not evidence in the case.'' Here also the prosecuting attorney promptly disclaimed any intent to impugn the character of opposing counsel, who, he said, merely was following ''his sworn duty to use every argument, every form of legitimate persuasion, which is the only kind he has used, to try to acquit him.''

Finally, Silva assigns as misconduct statements as to the possibility that, if not convicted, he would kill again in the future. In the trial of the issue upon the plea of not guilty, Silva testified, without objection, that he would again commit the same crime under similar circumstances. The court sustained an objection to a similar remark made by the district attorney in his argument at the close of the trial to determine whether Silva was sane, and the jury was admonished to disregard it. Based as they were upon evidence received without objection, the remarks were a legitimate comment upon the character of the defendant and did not constitute prejudicial misconduct. (*Cf. People* v. *Young,* 17 Cal.2d 451, 453 [110 P.2d 392].)

The record shows overwhelming proof of an assault by Silva coolly and deliberately perpetrated with the intent to take the life of King. No evidence was presented which would tend to discredit the several witnesses who testified concerning the circumstances under which the crime was committed, or the statements and testimony of Silva. The medical experts agreed that Silva was sane at the time King was stabbed.

The judgment and the order denying the motion for a new trial are affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.