[Crim. No. 12490. In Bank. Jan. 14, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN J. ST. MARTIN, Defendant and Appellant.

526

## COUNSEL

Coleman A. Blease, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Daniel J. Kremer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PETERS, J.**—Defendant, a life prisoner, was charged with an assault with malice aforethought and with a deadly weapon and by means of force likely to produce great bodily injury upon another inmate, James Carter. (Pen. Code, § 4500.) A jury found defendant guilty as charged and fixed the penalty at death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

On the morning of January 7, 1968, Sergeant Clarence Wilson of the

California State Prison at Folsom heard sounds of scuffling and cries of help. He recognized the voice of James Carter, an inmate, calling "Oh, God, help me." Wilson ran to the stairway, climbed the stairs, and went to Carter's cell, which was standing open. He saw Carter on the cell's lower bunk with defendant kneeling over him. Carter was still crying for help. Wilson paused at the door and ordered defendant to come out of the cell. Defendant ignored him. Carter said, "He has got a knife. Get him off me before he kills me." Just after Carter spoke, Wilson saw defendant gripping something with both hands and forcing his hands down into Carter's body. Wilson grabbed defendant's sleeve, and defendant pulled away saying, "Get out of here, Sarge." As he spoke, Wilson observed him raise a knife and plunge the blade into Carter's chest.

The officer then attempted to drag defendant from the cell by his leg. Defendant told him to "get out of here" and attempted to kick free of the officer's grip. Carter was also struggling with defendant. Wilson backed out of the cell, sounding his whistle to summon help, and again told defendant to give him the knife. Defendant again raised the knife, hesitated an instant, and stabbed Carter again in the chest. Another officer arrived, and he and Wilson succeeded in dragging defendant from the cell.

Carter was taken to the prison hospital where he was pronounced dead. He had cuts on his scalp, cheek, neck, ankle, and hands. The latter were "defense" wounds, often found on someone who has been stabbed. His chest bore two deep wounds as well as a number of abrasions. Death was caused by a stab wound approximately four inches deep which fractured his ribs, penetrated the sac surrounding the heart, touched the heart and pierced the left lung.

The only wounds on defendant were two cuts on his hands which were probably caused by holding a sharp object.

Carter's cellmate, William Jackson, testified that defendant had made threats regarding Carter and that a night or two before the homicide he heard defendant state, after Carter had walked past him, "some day I ought to dust that son of a bitch." Jackson said that in prison jargon "to dust" means to kill.

At the time of the homicide, defendant was serving consecutive indeterminate life sentences for second degree murder and robbery in the first degree.

Defendant testified that Joe Morgan had told him in November of 1967 Carter was looking for someone to take a "contract" to kill him, that on January 7 he went to Carter's cell to talk the matter out, that Carter invited him in but refused to discuss the "beef" and ordered him out, that when he refused Carter became angry, pulled a knife from under the

pillow and attacked. Defendant said he had gone to the cell unarmed, that he had no intention to harm Carter, and that he did not remember anything of the fight.

On cross-examination, defendant admitted that while in the service he was convicted of desertion and sodomy, that he was convicted of armed robbery in Michigan, and that he was convicted of armed robbery and murder, second degree, for which latter offenses he was presently confined.

Another inmate, Lawrence Hollomon, testified that he saw defendant enter Carter's cell and attempt to engage him in conversation regarding Carter's attempts to hire a killer, that Carter grabbed a knife and started a fight with defendant, that during the fight the cell door swung shut, that defendant attempted to flee but could not because of impediments on the cell floor and the closed door, that Carter was pressing a furious attack pummeling defendant with a board and hammering him with a 10-ounce jar of coffee, and that on arriving at the scene Sergeant Wilson opened the cell door to enter.

Inmate Morgan testified that in the latter part of 1967 Carter asked him to find someone to kill defendant and that subsequently Carter said he had a knife and would do the job himself. He told defendant of Carter's statements.

Inmate James Woosley testified that Carter's cellmate had said that Carter had a knife two or three days before his death and that the cellmate had attempted to persuade him to get rid of it.

Three psychiatrists testified for the defense that the victim had aggressive potential. On cross-examination they said that the victim's violent behavior had always been associated with excessive drinking. The defense also offered evidence that the offenses for which Carter was incarcerated involved the theft of a highway patrol car and an officer's gun, shooting an officer and firing at others in attempting to escape capture.

The jury was instructed that malice aforethought was a necessary element of the crime charged, and several instructions were given relating to that term. The instructions given, however, did not include one on provocation.

We recently held in a prosecution under section 4500 that it was error to refuse an instruction on provocation. (*People* v. *Chacon,* 69 Cal.2d 765, 781 [73 Cal.Rptr. 10, 447 P.2d 106].) We stated: "In a prosecution for murder the presence of sufficient provocation or heat of passion negates the existence of the requisite malice aforethought. [Citation.]

In the usual case, this instruction supplements the self-defense instruction. Thus, in a prosecution for murder, even though the defense of self-defense fails, as it might for excessive retaliation by the defendant, the jury might still find the original attack sufficient to constitute provocation, which would preclude a finding of malice aforethought and reduce the crime to manslaughter. Since the refusal to instruct on provocation would be erroneous in a prosecution for murder, it was erroneous here."

■ The Attorney General asserts that here the instructions offered by defendant on provocation were improper in form. However, even if it be assumed that the offered instructions were erroneous, we are satisfied that the trial court in the circumstances of this case was required to instruct on provocation on its own motion.

■ It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. *(People* v. *Castillo,* 70 Cal.2d 264, 270-271, fn. 5 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Henderson,* 60 Cal.2d 482, 489-490 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Jackson,* 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937]; *People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367]; *People* v. *Warren,* 16 Cal.2d 103, 116-117 [104 P.2d 1024].) The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. *(People* v. *Wilson,* 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) In application of these rules, this court has recognized that the trial court on its own motion must instruct on the issue of diminished capacity in a murder case where there is substantial evidence that the defendant is relying upon such a defense. *(People* v. *Castillo, supra,* 70 Cal.2d 264, 270-271; *People* v. *Henderson, supra,* 60 Cal.2d 482, 490-491; see *People* v. *Conley,* 64 Cal.2d 310, 319 [49 Cal.Rptr. 815, 411 P.2d 911].)

■ Similarly, where substantial evidence is presented sufficient to inform the court that the defendant is relying upon provocation to show that he did not act with malice aforethought in a prosecution under section 4500, the court must instruct on its own motion on the issue of provocation. The close analogy between the defenses of diminished capacity and considerable provocation, both of which negate malice aforethought, has recently been pointed out by this court in a case involving section 4500 (*People* v. *Chacon, supra,* 69 Cal.2d 765, 781), and no reason appears to view the two defenses differently with regard to the court's duty to instruct on its own motion.

If anything, the court's duty is stronger where the issue is provocation because provocation is explicitly dealt with in the code section relating to malice aforethought. (Pen. Code, § 188.)

■ In the instant case, there is substantial evidence of provocation. Defendant's testimony and the testimony of inmate Hollomon are that Carter drew a knife and attacked defendant. Their testimony is not directly contradicted by the only other witness to the killing, Sergeant Wilson, who arrived at the cell after the fight commenced. Although in view of the circumstantial evidence and the impeachment of defendant and inmate Hollomon the jury was not required to accept their version of what occurred, their testimony constitutes substantial evidence upon which a finding of provocation could be predicated.

■ The error in failing to instruct on provocation must be deemed prejudicial. In the light of the substantial, direct testimony of provocation, we cannot assume that the jury would have rejected it in favor of the circumstantial evidence that defendant commenced the attack. Although the jury was instructed on self-defense, the jury's rejection of that defense does not show that it would have also rejected a claim of provocation. The jury was told that the defense of self-defense is not operative in favor of a person attacked who renders his assailant incapable of inflicting further injuries and thereafter inflicts further injury on the attacker. On the basis of Sergeant Wilson's testimony, the jury may have concluded that defendant, although attacked initially, succeeded in rendering Carter incapable of further injuries but that instead of withdrawing he thereafter killed Carter, and such a conclusion, although defeating the claim of self-defense, would not dispose of the claim of provocation. Defendant was entitled to a jury trial on all of the issues presented by the evidence; the right was denied; and the denial of such a right is in itself a miscarriage of justice within section 13 of article VI of the California Constitution. (*People* v. *Castillo, supra,* 70 Cal.2d 264, 270-271; *People* v. *Wilson, supra,* 66 Cal.2d 749, 764; *People* v. *Modesto,* 59 Cal.2d 722, 730-731 [31 Cal.Rptr. 225, 382 P.2d 33]; *People* v. *Carmen,* 36 Cal.2d 768, 773-774 [228 P.2d 281].) Moreover the evidence of malice aforethought is not overwhelming, and we are of the opinion that in the absence of the error there is a reasonable probability that a result more favorable to defendant would have been reached. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

We turn now to other issues that may arise on retrial.

■ The first such question presented is whether the court should instruct upon necessarily included offenses. ■ The general rule is that

a defendant is entitled upon request to instructions on necessarily included offenses which the evidence tends to prove. (E.g., *People* v. *Miller,* 57 Cal.2d 821, 829-830 [22 Cal.Rptr. 465, 372 P.2d 297]; *People* v. *Dewberry,* 51 Cal.2d 548, 555-556 [334 P.2d 852]; *People* v. *Carmen, supra,* 36 Cal.2d 768, 773.) Section 1159 of the Penal Code providing for conviction of lesser included offenses is absolute on its face and does not contain an exception for prosecutions under section 4500 or any other statute.

The requirement of instructions on lesser included offenses is based on the elementary principle that the court should instruct the jury on every material question. (E.g., *People* v. *Carmen, supra,* 36 Cal.2d 768, 773.) The state has no. interest in a defendant obtaining an acquittal where he is innocent of the primary offense charged but guilty of a necessarily included offense. Nor has the state any legitimate interest in obtaining a conviction of the offense charged where the jury entertains a reasonable doubt of guilt of the charged offense but returns a verdict of guilty of that offense solely because the jury is unwilling to acquit where it is satisfied that the defendant has been guilty of wrongful conduct constituting a necessarily included offense. Likewise, a defendant has no legitimate interest in compelling the jury to adopt an all or nothing approach to the issue of guilt. Our courts are not gambling halls but forums for the discovery of truth.

In 1909 this court, however, in considering a prosecution under then section 246 of the Penal Code, the predecessor of section 4500, held that instructions on lesser included offenses should not be given in such a prosecution. (*People* v. *Carson,* 155 Cal. 164, 176-177 [99 P. 970].) The court reasoned: "Nothing could be accomplished by requiring a jury under such a prosecution to return a verdict of either of these lesser degrees of crime against one already serving a term of life imprisonment, because no punishment whatever could be meted out to him as a penalty on such conviction. . . . where a defendant is already undergoing a life sentence it would be idle, even absurd, to say that the legislature ever contemplated in a prosecution under section 246 of the Penal Code the return of verdicts upon which no possible punishment could be meted out to the defendant, and which, for all practical purposes, would be equivalent to a verdict, at least as far as any punishment thereon is concerned, of not guilty." (155 Cal. at p. 176.) The *Carson* case was followed in *People* v. *Oppenheimer* (1909) 156 Cal. 733, 745 [106 P. 74].

The reasoning of *Carson,* it is apparent, depends upon two premises: first, a defendant sentenced to life imprisonment will remain in prison for life; and second, a defendant convicted under former section 246 may only receive the death penalty. If either premise is false, the reasoning fails because it cannot be said that no punishment other than the death penalty can be meted out to such a defendant upon conviction or that the Legis-

lature did not contemplate punishment of less than death for such offenses. In the light of our present statutory scheme both premises are false.

In 1913, provision was made for parole of life term convicts. (Stats. 1913, ch. 591, pp. 1048-1049, § 1.) The indeterminate sentence law was adopted in 1917 (Stats. 1917, ch. 527, pp. 665-666, § 1), and it was held that a person sentenced to an indeterminate term the maximum of which was life was undergoing a life sentence within the meaning of former section 246 of the Penal Code (*People* v. *McNabb,* 3 Cal.2d 441, 444-445 [45 P.2d 334]).

These two statutory changes undermined the first premise of the *Carson* reasoning. ■ In the light of the parole statute and the indeterminate sentence law, it could no longer be said that a defendant sentenced to life imprisonment will necessarily remain in prison for life.

Subsequent statutory changes undermined the second premise of the *Carson* reasoning. In 1959, the Legislature amended section 4500 and deleted the mandatory death penalty requirement where the victim of the assault does not die and gave the trier of fact the option of imposing life imprisonment without parole for nine years. (Stats. 1959, ch. 529, p. 2497, § 1.) The Legislature in 1965 deleted the mandatory death penalty where the victim was an inmate, and further amended the section to provide that a sentence of life imprisonment under the section shall be consecutive to any sentence the defendant was presently serving. (Stats. 1965, ch. 1904, p. 4412, § 1.)

■ These amendments make clear that, although in some situations the death penalty remains mandatory for a conviction of a violation of section 4500, there are other situations where the penalty is discretionary for a defendant convicted under the section and that the Legislature has provided a punishment of less than death for such an offense in some circumstances. ■ It should also be pointed out that the Legislature has recognized that imprisonment for a term of years as well as life is appropriate for an offense by a life term prisoner. Prior to 1963 section 4501.5 of the Penal Code dealing with a battery by a prisoner upon a nonprisoner was applicable only to prisoners "undergoing a sentence of less than life." (Stats. 1959, ch. 794, p. 2807, § 2.) In that year the Legislature deleted the quoted phrase thus making the section applicable to life prisoners. (Stats. 1963, ch. 2027, p. 4168, § 2.) The penalty for violation of the section is not less than one nor more than three years imprisonment. Accordingly, in the light of our present statutory pattern, it may not be concluded, as the court did in *Carson,* that a term of imprisonment for a life prisoner does not provide a substantial penalty.

Subsequent to the adoption of the statutory provision for parole of life term convicts and the indeterminate sentence law but prior to the 1959 and

1965 amendments to section 4500, this court in *People* v. *Jefferson* (1956) 47 Cal.2d 438, 444-445 [303 P.2d 1024], reaffirmed the *Carson* rule banning instructions on necessarily included offenses. The court did not discuss the reasoning of *Carson* or the adoption of the provision for parole and the indeterminate sentence law but instead relied upon the reenactment rule. The court reasoned: "When the Legislature enacted section 4500 of the Penal Code in the same wording as that in the former section 246 of the Penal Code, it presumably knew of the prior decisions construing the section and thus *used the same language* intending that it be given the same meaning." (Italics added.)

In *People* v. *Wright* (1961) 55 Cal.2d 560, 562 [11 Cal.Rptr. 749, 360 P.2d 325], the court, relying upon *Jefferson,* again held that no instructions on lesser included offenses were required. In *Wright* the victim of the assault died, and although the court recognized that in 1959 section 4500 had been amended as to cases where the victim survived the assault, the court pointed out that in all other respects the section was reenacted without change. In *People* v. *Dorado,* 62 Cal.2d 338, 361 [42 Cal.Rptr. 169, 398 P.2d 361], decided in 1965 but prior to the 1965 amendment to section 4500, the victim of the assault died, and the court reaffirmed the *Carson* rule citing *Jefferson.*

The reenactment rule, however, is not applicable to the present case. ▊ The reenactment rule may not be applied where the Legislature amends the statute which was the basis of the prior judicial construction so as to exclude the defendant from the reenacted part of the statute and adds new provisions in different language applicable to him. In the words of the rule, the Legislature must have "used the same language" before the rule applies. Defendant has been expressly excluded from the portion of the statute involved in all of the prior cases, and this case comes within the language of the section added by the 1959 and 1965 amendments.[1]

---

[1]Section 4500, with the 1959 and 1965 amendments italicized and the pre-1959 language without italics, reads as follows: "Every person undergoing a life sentence in a state prison of this state, who, with malice aforethought, commits an assault upon the person of another, *other than another inmate,* with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death; *however, in cases in which the person subjected to such assault does not die within a year and a day after such assault as a proximate result thereof, or the person so assaulted is another inmate, the punishment shall be death or imprisonment in the state prison for life without possibility of parole for nine years, at the discretion of the court or jury trying the same, and the matter of punishment shall be determined as provided in Section 190.1 of this code. For the purpose of computing the days elapsed between the commission of the assault and the death of the person assaulted, the whole of the day on which the assault was committed shall be counted as the first day.*

"*Any person who, under this section, is punished by imprisonment rather than death, shall be required to serve his sentence consecutively to any sentence he is presently serving.*"

 Since the reenactment rule is inapplicable, since both of the premises upon which the *Carson* reasoning depends are false in the light of our present statutory scheme, and since there appears no valid reason to depart from the general rule requiring instructions upon necessarily included offenses, we are satisfied that upon retrial the court should instruct upon such offenses.

 Upon retrial, should the evidence be substantially the same as that presented in the first trial the jury shoud be instructed on manslaughter. Two different types of necessarily included offenses have been recognized in this state. First, where one offense cannot be committed without committing another offense, the latter offense is a necessarily included offense. (*People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512].) Second, a lesser offense is necessarily included if it is within the offense specifically charged in the accusatory pleading, as distinguished from the statutory definition of the crime. (*People* v. *Marshall,* 48 Cal.2d 394, 397 [309 P.2d 456]; see *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580]; *People* v. *Thomas,* 58 Cal.2d 121, 128 [23 Cal.Rptr. 161, 373 P.2d 97].) Count I of the indictment in the instant case expressly charged that Carter died as a result of the assault which was willful and felonious, and it is clear that under the second test voluntary manslaughter was a necessarily included offense.

"Manslaughter is the unlawful killing of a human being without malice" and is voluntary when committed "upon a sudden quarrel or heat of passion." (Pen. Code, § 192.) Malice is implied when it is proved that the defendant committed the homicide and "no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188; *People* v. *Conley, supra,* 64 Cal.2d 310, 320.) Defendant's testimony and the testimony of inmate Hollomon furnish the basis for a finding that Carter drew a knife and attacked defendant, that there was substantial provocation, and that the killing was committed upon a sudden quarrel and heat of passion.

 Included in the instructions given the jury regarding the meaning of malice aforethought was the definition of malice contained in Penal Code section 7, subdivision 4,[2] and defendant asserts that this definition of malice should not be given the jury in a prosecution under Penal Code section 4500. This assertion is meritorious. *People* v. *Chacon, supra,* 69 Cal.2d 765, 781, in holding that the instructions there given on malice aforethought

---

[2]Penal Code section 7 reads: ". . . The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context: . . . 4. The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person or an intent to do a wrongful act, . . ."

were inadequate stated, "The words malice aforethought in section 4500 have the same meaning as in sections 187 [murder] and 188 [malice definition]. (*People* v. *McNabb* (1935) 3 Cal.2d 441, 456 . . . ; *People* v. *Wells* (1949) 33 Cal.2d 330, 338 . . . ; see *People* v. *Berry* (1955) 44 Cal.2d 426, 430 . . . .) Thus the rules that have evolved regarding malice aforethought as an element in a charge of murder apply to section 4500." (See also *People* v. *Sanchez,* 65 Cal.2d 814, 820 [56 Cal.Rptr. 648, 423 P.2d 800] [vacated on another ground in 70 Cal.2d 562 [75 Cal.Rptr. 642, 451 P.2d 74]].) And it has been held that malice as used in the statute defining murder imports something more than the definition given in section 7 (*People* v. *Conley, supra,* 64 Cal.2d 310, 320-321; *People* v. *Gorshen,* 51 Cal.2d 716, 731 [336 P.2d 492]; *People* v. *Waysman,* 1 Cal. App. 246, 247 [81 P. 1087]) and that section 7's definition of malice should not be read to a jury in a murder case (*People* v. *Chavez,* 37 Cal.2d 656, 666 [234 P.2d 632]; see *People* v. *Conley, supra; People* v. *Gorshen, supra*). Accordingly, section 7's definition of malice likewise should not be read to the jury in a section 4500 case.

We recognize that a number of cases in discussing the meaning of malice aforethought, as used in section 4500, have given, among other things, the section 7 definition of malice. (*People* v. *Sanchez, supra,* 65 Cal.2d 814, 820 [vacated on other grounds in 70 Cal.2d 562]; *People* v. *Silva,* 41 Cal.2d 778, 782 [264 P.2d 27]; *People* v. *Wells, supra,* 33 Cal.2d 330, 338.) However, the jury should not be so instructed since, as we have seen, malice aforethought, as used in section 4500, imports something more than section 7's definition of malice. *People* v. *Berry, supra,* 44 Cal.2d 426, is overruled to the extent that it is inconsistent with the views expressed herein.

At the time of the assault upon Carter defendant's indeterminate sentences of five years to life had not been fixed at less than the maximum, and he was therefore "undergoing a life sentence" within the meaning of section 4500. (*People* v. *Harmon,* 54 Cal.2d 9, 17 [4 Cal.Rptr. 161, 351 P.2d 329] [overruled on another ground in *In re Estrada,* 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948]]; *People* v. *Jefferson, supra,* 47 Cal.2d 438, 442-443; *People* v. *Wells, supra,* 33 Cal.2d 330, 335.) He contends that his conviction is invalid and presumably he cannot be retried for violating section 4500 because, assertedly, he was not afforded counsel at the hearings at which the Adult Authority declined to fix his term at less than the maximum. He has attached documents to his brief in support of his assertion. The documents, however, were not presented to the trial court, and ordinarily matters not presented to the trial court and hence

not a proper part of the record on appeal will not be considered on appeal. (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Reeves,* 64 Cal.2d 766, 776 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Arguello,* 61 Cal.2d 210, 213 [37 Cal.Rptr. 601, 390 P.2d 377] [vacated on another ground in 63 Cal.2d 566 [47 Cal.Rptr. 485, 407 P.2d 661]]; see also rule 13 of Cal. Rules of Court.) The record before us does not show whether the Adult Authority held hearings, and, if so, whether counsel was present. Furthermore, even if the record showed the asserted facts, those facts would not render the conviction invalid. ▮ "The proceedings of the Adult Authority are wholly administrative in nature, and that agency's determination of length of sentence or conditions of parole is not a judicial act. (See *In re Sandel* (1966) 64 Cal.2d 412, 415-416 . . . ; *People* v. *Ray* (1960) *supra,* 181 Cal.App.2d 64, 68 [5 Cal.Rptr. 113].)" (*In re Schoengarth,* 66 Cal.2d 295, 304 [57 Cal. Rptr. 600, 425 P.2d 200].) ▮ A prisoner has no constitutional right to counsel at Adult Authority proceedings to fix his sentence. (*People* v. *Ray, supra* (cert. den. 366 U.S. 937 [6 L.Ed.2d 848, 81 S.Ct. 1662]); cf. *In re Schoengarth, supra* (no right to appointment of counsel at Adult Authority proceedings to determine matter of parole).)

*Mempa v. Rhay,* 389 U.S. 128 [19 L.Ed.2d 336, 88 S.Ct. 254], cited by defendant in support of his claim that he was entitled to counsel at hearings of the Adult Authority, differs from the present case. *Mempa* was primarily concerned with the right to counsel at the time of sentencing where the sentencing has been deferred subject to probation. Whether or not *Mempa* also applies to revocation of parole need not be decided. The case does not apply to proceedings to fix a sentence at less than maximum, the problem here involved.

▮ Defendant asserts that Penal Code section 1074, subdivision 8,[3] should be read literally and that it was therefore improper to exclude for cause veniremen whose conscientious opinions would not prevent their finding him guilty but would prevent their voting for a death penalty irrespective of the evidence that might be introduced at the trial. In support of the assertion defendant advances the same arguments that were made by the dissent in *People* v. *Tolbert,* 70 Cal.2d 790, 813 et seq. [76 Cal. Rptr. 445, 452 P.2d 661]. The majority of this court has not accepted these arguments.

▮ ▮ Defendant also contends that Penal Code section 190.1 is

---

[3]Penal Code section 1074, subdivision 8, reads: "A challenge for implied bias may be taken for all or any of the following causes, and for no other: . . . 8. If the offense charged be punishable with death, the entertaining of such conscientious opinions as would preclude his finding the defendant guilty; . . ."

unconstitutional because of the absence of standards to guide the jury in selecting between the penalties provided by law and that the death penalty violates due process since it inflicts a loss of life in the absence of any compelling state interest. These contentions were rejected by the majority in *In re Anderson,* 69 Cal.2d 613, 621-629, 632 [73 Cal.Rptr. 21, 447 P.2d 117].)

Other contentions by defendant lack merit or pertain to matters that are unlikely to occur upon retrial.

The judgment is reversed.

Traynor, C. J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

**MOSK, J.**—I dissent.

The majority opinion accurately recites prevailing principles of law. *People* v. *Chacon* (1968) 69 Cal.2d 765, 781 [73 Cal.Rptr. 10, 447 P.2d 106], makes it abundantly clear that the trial court's refusal to give an instruction on provocation, if applicable, was erroneous. In a prosecution for murder the presence of sufficient provocation or heat of passion usually negates the existence of the requisite malice aforethought. (*People* v. *Valentine* (1946) 28 Cal.2d 121, 132 [169 P.2d 1].) As stated in *Chacon,* in a prosecution for murder, even though the defense of self-defense fails because of excessive retaliation by the defendant, the jury could determine the original attack by the victim sufficient to constitute provocation.

In the usual prosecution for murder, failure to give an instruction on provocation, when appropriate, would be prejudicial. However, I do not find error under the facts of this case, but if there was error it was not prejudicial and clearly there was no miscarriage of justice. (Cal. Const., art. VI, § 13.)

Emphasis upon several salient facts is indicated. The victim, Carter, was approximately 47 years old, 5 feet 5 inches tall and weighed 130 to 135 pounds. The defendant, serving a sentence for a previous killing (second degree murder), is some 10 years younger, half a foot taller, and 40 pounds heavier. All the evidence indicates that prior to the conflict, the victim had been in a jovial mood, engaging in horseplay with other inmates, thus negating the likelihood that he harbored a brooding or menacing attitude and contemplated violence. The defendant invaded the victim's cell where the altercation took place.

Sgt. Wilson of the prison guards heard the victim calling for help, ran to his cell and there saw the defendant kneeling over the victim with the latter plaintively crying out for assistance. Wilson paused at the door and

ordered the defendant to come out of the cell. The defendant ignored the command and all the while he "was gripping something with both hands and was forcing his hands down into Carter's body." Wilson grabbed the defendant's sleeve, whereupon the defendant pulled away saying "get out of here, Sarge." As he spoke the defendant raised a knife and plunged the blade into the left side of Carter's chest.

The officer continued attempting to drag the defendant from the cell by his leg, but the defendant again told him to "get out of here," kicked Wilson's grip free and resisted Carter's efforts to wrest the knife away. Wilson sounded a whistle to summon help and once again ordered defendant to give him the knife. Instead of doing so the defendant raised the knife, hesitated a moment, and stabbed Carter again in the chest. Only after another officer arrived to assist Wilson were they able to subdue the defendant. Carter rolled onto the floor with a knife on his chest.

As to the initial phase of the assault, I concede that under *Chacon* "the jury might still find the original attack sufficient to constitute provocation," even though the defense of self-defense fails because of the clearly excessive retaliation. I would hold under the facts of this case, however, that if there were an original attack by Carter it was successfully repulsed and had terminated, and if there had been retaliation by the defendant to any original provocation, the provocation was concluded and the retaliation interrupted at the moment the prison guard arrived. The intervention by the guard, both physically and by assertion of authority, created an entirely new and divisible phase in the sequence of events. The cell was no longer an arena merely accommodating defendant versus Carter; it then became the scene for a conflict in which defendant deliberately defied the prison administration to begin an additional attack on Carter.

When Sgt. Wilson attempted to pull the defendant off the victim, when he ordered the defendant to stop the assault, when the defendant forcibly pulled away from the guard and demanded that the guard leave the cell and subsequently kicked the guard's grip free in order to plunge the knife into Carter, the defendant undertook a new, unprovoked and malicious attack culminating in the murder of Carter. In the course of events occurring in the presence of the guard, not only was there then no fear of imminent attack by Carter and thus no need for self-defense, there was no evidence whatsoever of any additional provocation relating to the additional assault by defendant.

Under these factual circumstances, without any evidence of provocation for the assault committed after intervention by the guard, failure to comply with the rule of *Chacon* was not improper. While omission of an instruction

ou provocation regarding the initial altercation may have been error, it was not prejudicial.

I would affirm the judgment.

McComb, J., concurred.