Filed 6/23/16  P. v. Montano CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068098 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN335761-3) |
| EFRAIN MONTANO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Scott Taylor, Alana Butler and Meredith S. White, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Efrain Montano of two counts of robbery (Pen. Code, § 211). The jury could not reach verdicts on allegations Montano was vicariously armed with a firearm (Pen. Code, § 12022, subd. (a)(1)), and the court subsequently granted the prosecution's motion to dismiss these allegations. However, the court found true an allegation Montano had a prior prison commitment conviction (Pen. Code, § 667.5, subd. (b)). The court sentenced Montano to four years in prison.

Montano appeals, contending the court prejudicially erred in instructing the jury with a bracketed paragraph in the CALCRIM No. 400 aiding and abetting instruction intended for use only when the prosecution is relying on the natural and probable consequences doctrine, which the prosecution was not relying on in this case. We conclude the error was harmless and affirm the judgment.

## BACKGROUND

Two women were standing in a parking lot talking when a four-door silver sedan drove in front of them, stopped for a few seconds, and then drove off. A few minutes later, the sedan returned and stopped near them again. Montano got out of the sedan's left rear passenger seat, an accomplice got out of the sedan's front passenger seat, and they approached the two women. The accomplice pointed a gun at the women, told them not to scream, and directed them to hand over their purses.[1] Montano took one woman's purse. The accomplice took the other woman's purse. Both women handed over their

---

[1]     Police never found the gun. Both women thought it may have been fake.

purses because they were afraid for their lives. Montano and the accomplice then got back into the sedan and left.

The two women got in a car and tried following the sedan, but they were unable to find it and returned to the parking lot. While they were attempting to follow the sedan, one of the women reported the robbery to police. She described the sedan to a 911 operator, stating there was a football emblem on its gas tank door. The other woman spoke with a police officer at the crime scene. She also described the sedan, indicating it had no license plate, but there was a paper with red, white and black writing in the license plate area.

A nearby patrol officer heard a radio call about the robbery, which included the sedan's description. Shortly afterwards, the officer spotted a four-door silver sedan with a football emblem on the gas tank door and paper license plates with red and white lettering. The officer stopped the car and had its three occupants, including Montano and his accomplice, step out of it. At a subsequent curbside lineup, one of the women identified both Montano and his accomplice. The other women identified only Montano's accomplice.

A field evidence technician searched the sedan and found one woman's purse and both women's identification and credit cards. The field evidence technician found one woman's wallet and the other woman's purse on the side of the road near the location of the robbery.

DISCUSSION

I

A

1

The prosecution's theories of culpability were that Montano aided and abetted the robbery of one woman and either directly perpetrated or aided and abetted the robbery of the other woman. These theories required the court to instruct on aiding and abetting. (*People v. St. Martin* (1970) 1 Cal.3d 524, 531 [a court has a sua sponte duty to instruct the jury on the principles of law that are closely and openly connected to the facts of the case and are necessary for the jury's understanding of the case].)

The CALCRIM No. 400 instruction on the general principles of aiding and abetting provides: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. [¶] A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator. [¶] [*Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime.*]" (Italics added.)

The bench notes for the instruction state, "When the prosecution is relying on aiding and abetting, give this instruction before other instructions on aiding and abetting to introduce this theory of culpability to the jury. [¶] . . . [¶] If the prosecution is also

4

relying on the natural and probable consequences doctrine, the court should also instruct with the last bracketed paragraph."[2]  (Bench Notes to CALCRIM No. 400 (2010 rev.).)

2

Although defense counsel objected to the court's use of the bracketed portion of the instruction on the ground the prosecution was not relying on the natural and probable consequences doctrine, the court overruled the objection stating it did not think the bracketed portion of the instruction addressed the doctrine.  Instead, the court thought the bracketed portion of the instruction was factually applicable because one could argue "if [Montano] was aiding and abetting one robbery, [he] might have actually committed another robbery."  Consistent with this view, the court recited the entire CALCRIM No. 400 instruction to the jury, including the bracketed paragraph.

---

[2]     "The natural and probable consequences route to a finding of criminal liability operates as follows:  ' "A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime.  The latter question is not whether the aider and abettor actually foresaw the additional crime, but whether, judged objectively, it was reasonably foreseeable. [Citation.]"  [Citation.]  Liability under the natural and probable consequences doctrine "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." '  [Citation.]  In short, natural and probable consequences liability for crimes occurs when the accused did not necessarily intend for the ultimate offense to occur but was at least negligent (from the standard expected of a reasonable person in the accused's position) about the possibility that committing the proximate offense would precipitate the ultimate offense that actually occurred."  (*People v. Rivas* (2013) 214 Cal.App.4th 1410, 1431-1432 (*Rivas*).)

5

B

However, the court's aiding and abetting instructions did not end with CALCRIM No. 400. The bench notes to CALCRIM No. 400 further explained, "If the prosecution's theory is that the defendant intended to aid and abet the crime or crimes charged (target crimes), give CALCRIM No. 401, *Aiding and Abetting: Intended Crimes*." (Bench Notes to CALCRIM No. 400 (2010 rev.).) "If the prosecution's theory is that any of the crimes charged were committed as a natural and probable consequence of the target crime, CALCRIM No. 402 or 403 should also be given." (Bench Notes to CALCRIM No. 400 (2010 rev.).)

Following the bench notes' guidance and based on the prosecution's theory Montano intended to aid and abet a robbery, the court did not give the jury either the CALCRIM No. 402 or 403 instructions on the natural and probable consequences doctrine. Rather, using a tailored version of CALCRIM No. 401, the court instructed the jury in relevant part: "To prove the defendant is guilty of a crime based on aiding and abetting, that crime, the People must prove that, one, the perpetrator committed a crime; two, the defendant knew that the perpetrator intended to commit the crime; three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and four, the defendant's words or conduct did, in fact, aid or abet the perpetrator's commission of the crime.

"Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to and does, in fact, aid, facilitate, promote, encourage or instigate the perpetrator's commission of that crime. [¶] If all of these

6

requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor. If you conclude the defendant was present at the scene of a crime or failed to prevent a crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of the crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

## II

### A

Montano contends we must reverse his conviction because the court's erroneous use of the bracketed portion of the CALCRIM No. 400 instruction deprived him of due process of law. Specifically, he contends the error likely led the jury to convict him of robbery even if the jury did not believe his accomplice intended to commit a robbery or he intended to aid and abet the accomplice in committing a robbery, but instead only believed he intended to assist the accomplice in committing a lesser offense or only intended to commit a lesser offense himself.

The People concede the instructional error. (*Rivas*, *supra*, 214 Cal.App.4th at p. 1432 [the bracketed portion of the CALCRIM No. 400 instruction is superfluous if the prosecution is not relying upon the natural and probable consequences doctrine].) However, the People contend the error was harmless. We agree.

### B

" 'With regard to criminal trials, "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is

7

' "whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process." ' [Citation.] ' "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." ' [Citation.] If the charge as a whole is ambiguous, the question is whether there is a ' "reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " ' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 182; *Rivas*, *supra*, 214 Cal.App.4th at p. 1429 & fn. 9.)

In this case, Montano essentially argues the jury mistakenly and incorrectly applied the natural and probable consequences doctrine even though neither party discussed the doctrine during closing arguments and the only instruction the jury received related to the doctrine was the bracketed paragraph, not the details of the doctrine itself. In substantially similar circumstances, the Supreme Court concluded it is highly unlikely the jury relied upon or misapplied the doctrine in a constitutionally impermissible way. (*People v. Prettyman* (1996) 14 Cal.4th 248, 273; *Rivas*, *supra*, 214 Cal.App.4th at pp. 1432-1433.)

Moreover, viewing the instructions as a whole in light of the trial record (*Estelle v. McGuire* (1991) 502 U.S. 62, 72), we conclude the jury would have understood its task to be determining whether Montano aided and abetted the robbery of one woman and whether he directly perpetrated or aided and abetted the robbery of, or some lesser form of theft against, the other woman. Indeed, this is precisely how both parties framed the issues in their closing arguments.

Within this framework, the prosecution argued Montano and his accomplice worked together to rob both women. Defense counsel argued Montano committed the lesser offense of grand theft from the person of one woman and could not be found beyond a reasonable doubt to have aided and abetted in the robbery of the other woman. Neither party addressed Montano's potential culpability for a nontarget crime based on his aiding and abetting a target crime. The jury, therefore, could only have based its verdicts on its agreement with the prosecution's theories of culpability and not on the natural and probable consequences doctrine or some other speculative theory. (*Rivas*, *supra*, 214 Cal.App.4th at p. 1433.) Accordingly, we conclude beyond a reasonable doubt the error did not contribute to the jury's verdict. (*Id*. at p. 1430, fn. 10, citing *Chapman v. California* (1967) 386 U.S. 18, 24.)

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

O'ROURKE, J.

9