Filed 2/18/14  P. v. Melendez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LUIS MIGUEL MELENDEZ,<br><br>  Defendant and Appellant. | B245190<br><br>(Los Angeles County<br>Super. Ct. No. BA387517) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Drew E. Edwards, Judge.  Affirmed.

Debra Fischl, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Appellant Luis Miguel Melendez appeals from the judgment entered upon his conviction by jury of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1),[1] count 1), making criminal threats (§ 422, count 14), and resisting an executive officer (§ 69, count 17).[2]  In a bifurcated proceeding, the trial court found true that appellant suffered a prior serious felony conviction (§ 667, subd. (a)(1)), which qualified as a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  The trial court sentenced appellant to state prison for a total term of 14 years and four months, calculated as follows:  on count 14, 11 years (upper term of three years, doubled pursuant to the Three Strikes law, plus five years for the prior serious felony conviction); on count 1, a consecutive term of two years; and, on count 17, a consecutive term of one year and four months.  The trial court awarded appellant 880 days of custody credit.

Appellant contends that the trial court violated its sua sponte duty to instruct on misdemeanor resisting a peace officer (§ 148) as a lesser included offense of resisting an executive officer.  We find no error and affirm the judgment.

## FACTUAL SUMMARY

Appellant does not challenge the sufficiency of the evidence supporting his convictions.  Accordingly, viewing the record in the light most favorable to the judgment (*People v. Bolin* (1998) 18 Cal.4th 297, 331), we briefly summarize the facts while focusing on the circumstances of his arrest which are relevant to the issue on appeal.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Appellant was acquitted of corporal injury to a spouse (§ 273.5, subd (a), count 9), making criminal threats (§ 422, count 10), forcible oral copulation (§ 288a, subd. (c)(2)(A), count 15), and forcible rape (§ 261, subd. (a)(2), count 16).  The jury was unable to reach verdicts and the trial court declared a mistrial on the following 11 counts: three counts of forcible oral copulation (§ 288a, subd. (c)(2)(A), counts 2, 7, and 11), three counts of forcible rape (§ 261, subd. (a)(2), counts 3, 8, and 12), two counts of corporal injury to a spouse (§ 273.5, subd (a), counts 5 and 13), sodomy by threat (§ 286, subd. (c)(3), count 4), making criminal threats (§ 422, count 6), and possession of a firearm by a felon (§ 12021, subd. (a)(1), count 18).

2

Appellant and Jazmin C. were involved in a tumultuous dating relationship beginning in August 2010. In January 2011, appellant accused Jazmin C. of cheating on him and punched her with his fists several times in both eyes. Appellant broke up with Jazmin C. following this incident. In late March 2011, Jazmin C. resumed dating appellant and they lived together at appellant's mother's house beginning in April 2011. On August 4, 2011, appellant and Jazmin C. argued about money. Appellant was ironing his pants for work and burned Jazmin C.'s back with a flat iron. He told her he wanted to put the iron against her face.

On August 5, 2011, appellant called Jazmin C. at her workplace and accused her of using his cell phone to talk to another man. He told her: "You better quick [*sic*] your job right now and come home. I am going to kick your ass worse than [the] last time. You should have learned from your first lesson. If you come home, I am going to fuck you up." Jazmin C. told her coworker she was afraid to go home. Jazmin C.'s boss called the police. Los Angeles Police Department (LAPD) Officer Jordan Patton and his partner Officer Greg Hall took a statement from Jazmin C., which included a description of the car appellant was driving.

Later that night appellant's car was found in the parking lot of Jazmin C.'s workplace. Appellant was sitting in the driver's seat of the car and the driver's side window was down. Several LAPD officers ordered appellant to get out of the car. They called to him by name in a loud tone of voice and they attempted to speak to him in Spanish. They used their PA system and "chirped" their sirens. Appellant did not respond to the police requests. An arrest team of five officers approached appellant's vehicle. LAPD Officer Ryan Peake opened the car door and grabbed appellant's left arm. Appellant "squared" his shoulders so that he was face-to-face with Officer Peake and started "swinging his hands in an upward punching motion." LAPD Officer Jonathan Rocha attempted to grab appellant's right hand. Appellant kicked his feet out of the driver's side door and swung at Officer Rocha two or three times before he made contact with a punch to Officer Rocha's right eye. Officer Rocha was "bleeding all over the place" and suffered a laceration to his right eyebrow that required four stitches.

3

Officer Peake dragged appellant out of the car and yelled at him to "Stop resisting." Several officers grabbed appellant's arms and legs but he kept fighting and wrestling with the police officers. Officer Patton struck appellant approximately three times in the head and the other officers were able to roll appellant over and handcuff him. It took approximately five minutes from the time Officer Peake opened appellant's car door until Officer Patton struck appellant and the police officers were able to subdue appellant.

Appellant testified on his own behalf. On August 5, 2011, he called Jazmin C. and talked to her about his cell phone bill but denied threatening her. Later that day appellant learned that "there was police all over [his] house." He wanted to "get a hold of Jazz" so he drove to her workplace. Appellant sat in the car drinking alcohol and then passed out. Appellant woke up in the hospital and had no memory of what happened after he passed out in the car.

## DISCUSSION

### Duty to Instruct on Lesser Included Offense

Appellant contends that section 148 is a lesser included offense of section 69 and therefore the trial court should have instructed on the lesser offense of willfully resisting a peace officer in the performance of official duties (§ 148, subd. (a)(1)) as to count 17.

"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]" (*People v. St. Martin* (1970) 1 Cal.3d 524, 531.) "That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged." (*People v. Breverman* (1998) 19 Cal.4th 142, 154 (*Breverman*).)

4

During the pendency of this case, our Supreme Court decided *People v. Smith* (2013) 57 Cal.4th 232 (*Smith*), which addressed the interplay of sections 69 and 148 as follows:

"Section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each crime. Section 69 states: 'Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment [in the state prison], or in a county jail not exceeding one year, or by both such fine and imprisonment.' We have explained that section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' [Citation.]

"The first way of violating section 69 'encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future.*' [Citation.] The actual use of force or violence is not required. [Citation.] Further, 'the statutory language [of the first clause of section 69] does not require that the officer be engaged in the performance of his or her duties at the time the threat is made. . . . Thus, for example, a person who telephones an off-duty officer at his or her home and threatens to kill the officer if he or she continues to pursue a lawful investigation the following day or week may be convicted of the first type of offense under section 69, even though the officer was not engaged in the performance of his or her duties at the time the threat was made.' [Citation.]

"The second way of violating section 69 expressly requires that the defendant resist the officer 'by the use of force or violence,' and it further requires that the officer was acting lawfully at the time of the offense. [Citation.]

"Section 148(a)(1) is similar to the second way of violating section 69 but is clearly different from the first way of violating section 69. Section 148(a)(1) says:

5

'Every person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.'

"A person who violates section 69 in the second way—by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty'—also necessarily violates section 148(a)(1) by 'willfully resist[ing] . . . any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment.' (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 257 (*Lacefield*) ['it appears to be impossible to violate the second type of offense in section 69 without also violating section 148(a)(1) . . . .'].)  But it is possible to violate section 69 in the first way—by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty—without also violating section 148(a)(1).  A person who threatens an executive officer in an attempt to deter the officer from performing a duty 'at some time *in the future*' [citation] does not necessarily willfully resist that officer in the discharge or attempt to discharge his or her duty under section 148(a)(1).  Accordingly, section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense.  [Citations.]  We disapprove *Lacefield* to the extent it held that section 148(a)(1) is a necessarily lesser included offense of section 69 based upon the statutory elements of those offenses.  [Citation.]" (*Smith, supra,* 57 Cal.4th at pp. 240–242.)

*Smith* also states that the language of the accusatory pleading must be considered in determining whether a trial court has a duty to instruct on section 148(a)(1). (*Smith, supra,* 57 Cal.4th at p. 242.)  Section 148(a)(1) is a necessarily included offense if the accusatory pleading charged appellant with both ways of violating section 69. (*Smith, supra,* at p. 242.)  In this case, the amended information charged appellant with both ways of violating section 69.  In addition to the first way of violating the statute, the amended information alleged that appellant violated the statute in the second way by

6

"knowingly resist[ing], by the use of force and violence [upon Officer Jonathan Rocha] in the performance of his[] duty." The People argued in closing that appellant "used force or violence to resist . . . he was swinging at Officer Rocha and made immediate contact." The trial court instructed the jury only on the second way of violating section 69.

But *Smith* reiterated the traditional rule that a "trial court is not required to instruct the jury on a necessarily included lesser offense '"when there is no evidence that the offense was less than that charged."'" (*Smith, supra,* 57 Cal.4th at p. 245; see *Breverman, supra,* 19 Cal.4th at p. 154.) The trial court's duty to instruct on the lesser offense only arises "so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater." (*Smith, supra*, at p. 244.)

The record reflects that "if appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69." (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 985 (*Carrasco*).) Officer Peake testified that appellant "squared" his shoulders and started "swinging his hands in an upward punching motion" when Officer Peake attempted to remove appellant from the car. Officer Rocha testified that appellant swung and missed two or three times before eventually connecting with a punch to Officer Rocha's right eye. Appellant refused all commands to "stop resisting" and continued to kick and wrestle with several police officers after being removed from his vehicle. The police officers attempted to gain control over appellant for approximately five minutes but were unable to handcuff him even though his arms and legs were being held by several officers. It took blows to the head by Officer Patton to finally subdue appellant and take him into custody.

Appellant argues that testimony by Officer Rocha that appellant was finally restrained and arrested "probably within a minute," conflicts with the testimony of other police officers and does not support the conclusion that his actions amounted to the use of force or violence. He disputes Officer Peake's account of how many minutes transpired from the time appellant was removed from his vehicle to the time he was eventually subdued and contends that he did not use force or violence in resisting arrest. But,

7

Officer Rocha's first response when asked about the timeframe involved was "I am not sure only because I was bleeding all over the place." Appellant did not offer any contrary evidence at trial disputing the account offered by Officers Peake, Patton, and Rocha. "Hence, the jury would have had no rational basis to conclude appellant wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence; accordingly, the trial court properly instructed the jury by not instructing it with section 148, subdivision (a) as a lesser included offense." (*Carrasco, supra,* 163 Cal.App.4th at p. 986.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.