Filed 10/26/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>CLIFFORD HARRISON,<br><br>　　Defendant and Appellant. | 2d Crim. No. B272132<br>(Super. Ct. No. BA426149)<br>(Los Angeles County) |

The *Brady* rule (*Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*)) is over 50 years old. It is alive, well, and as we explain, it is self executing. There need be no motion, request, or objection to trigger disclosure. The prosecution has a sua sponte duty to provide *Brady* information.

Clifford Harrison appeals his convictions by jury of possessing a firearm after a felony conviction (count 1; Pen. Code, § 29800, subd. (a)(1))[1] and making criminal threats (count 4; § 422, subd. (a)). Appellant admitted a prior strike conviction (§§ 667, subds. (b)-(j); 1170.12) and a prior serious felony conviction (§ 667, subd. (a)) and was sentenced to prison for 11

---

[1] All statutory references are to the Penal Code.

years.  He contends that the trial court erred in denying his motion for new trial after the prosecution failed to disclose a video recording of appellant invoking his right to remain silent during a *Miranda* interrogation.  (*Miranda v. Arizona* (1966) 384 U.S. 436, 479.)  Notwithstanding the video recording, the arresting officer testified that appellant waived his *Miranda* rights and admitted using a firearm to threaten the victim.

We reverse the conviction on count 4 for criminal threats and remand for new trial because of *Brady* error.  We deny relief as to count 1.  We also vacate the original sentence imposed as well as the purported resentencing conducted on August 24, 2017.  While an appeal pends, the trial court is without power to "resentence."  (See, e.g., *People v. Alanis* (2008)158 Cal.App.4th 1467, 1472-1474.)

*Facts*

On June 11, 2014, Donnis Moore gave his cousin, appellant, a ride home to their grandmother's house where Moore, appellant, and three family members lived.  Thereafter, appellant asked if he could borrow Moore's car.  When Moore said "'No,'" appellant demanded that Moore pay the rest of the money that Moore owed him.  Moore had sold a car that they inherited from their grandfather.  Moore owed appellant half the sale proceeds.  Moore said he would give appellant $200 or $300 the next day, at which point appellant pointed a handgun at Moore and said "'Go get my $600 right now.'"  Appellant allegedly said he would "blow" Moore's "brains [out]" if Moore did not pay him.

Moore left the house and asked his mother to call 911.  When Moore returned with a $600 check, the police were there and had detained appellant.  Officers searched the house and found a loaded .40 caliber semiautomatic handgun hidden in

2

a linen closet.  According to the police, appellant was advised of, and waived his *Miranda* rights.  Appellant told the arresting officer that the handgun was his and that he used it during the altercation with Moore.

*First Trial*

After the trial court granted appellant's *Faretta* motion (*Faretta v. California* (1975) 422 U.S. 806) to represent himself, appellant stipulated that he was a convicted felon with respect to the count 1 charge of possession of a firearm by a felon. Appellant told the trial court:  "I'm not denying that I had firearm . . . .  [¶]  [T]he real issue here is someone is saying that I assaulted them with this firearm and [made] these criminal threats.  So as far as having a firearm, I'm not trying -- I don't want to deny that."

In opening statement, appellant told the jury:  "Did I have a firearm?  Yes.  Was it used in this confrontation [with the victim] at all?  It was not."  The arresting officer testified that appellant waived his *Miranda* rights and admitted that the handgun was his and that he used it in the altercation with Moore.  In closing argument appellant again admitted possessing the firearm but denied that he used the firearm during the altercation with Moore.  The jury returned guilty verdicts on count 1, felon in possession of a firearm, and count 4 making criminal threats.  But, on count 2 (assault with a firearm; § 245, subd. (a)(2)) and count 3 (assault with a semiautomatic firearm; § 245, subd. (b)), the jury did not reach a unanimous verdict.

*Second Trial*

After the trial court ordered a mistrial on counts 2 and 3, it declared a doubt as to appellant's competency to stand trial (§ 1368) and revoked his pro per status.  Counsel was

appointed to represent appellant.  Thereafter, the trial court found that appellant's competency was restored and reinstated the criminal proceedings.

At the second trial, defense counsel asked the prosecution about a "DICV" reference in the police report and learned that it stood for "digital in-car video."  The prosecutor determined that the *Miranda* interview was recorded in the police car and provided counsel a copy of the video recording.  Based on the video recording, defense counsel successfully moved to exclude appellant's statements.  The trial court found that the officer continued to question appellant in violation of *Miranda* after appellant invoked his right to remain silent.  The confession was excluded in the second trial and the jury returned not guilty verdicts on counts 2 and 3.

*Motion for New Trial and Sentence*

Appellant moved for new trial on counts 1 and 4 on the theory that the prosecution committed *Brady* error by not providing the defense a copy of the video recording at the first trial.  Denying the motion, the trial court found that appellant waived the error.  Appellant "interposed no objection whatsoever to the admission of the statement, and it came in.  And as the People correctly cite under 353 of the Evidence Code [failure to object is a waiver], that should resolve the issue."

Appellant admitted the prior strike/prior serious felony conviction enhancements and was sentenced to 11 years state prison on count 1.  The sentence on count 4 for criminal threats was stayed pursuant to section 654.

*The Brady Rule*

Appellant contends that the trial court erred in not granting a new trial.  Pursuant to *Brady*, *supra*, 373 U.S. 83, and

4

its progeny, the prosecution has a constitutional duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence. (*People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 709.) The duty extends to evidence known to others acting on the prosecution's behalf, including the police. (*Ibid*.) A *Brady* violation occurs if three conditions are met: "'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [the] evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' [Citation.] Prejudice, in this context, focuses on 'the materiality of the evidence to the issue of guilt or innocence.' [Citations.]" (*People v. Salazar* (2005) 35 Cal.4th 1031, 1043 (*Salazar*).)

Here, the video recording was favorable to the defense and was not disclosed. As we shall explain, this prejudiced appellant as to count 4. It does not matter whether the non-disclosure was negligent or inadvertent. (*People v. Kasim* (1997) 56 Cal.App.4th 1360, 1381 (*Kasim*).) "A showing by the prisoner of the favorableness and materiality of any evidence not disclosed by the prosecution necessarily establishes at one stroke what in other contexts are separately considered under the rubrics of 'error' and 'prejudice.'" (*In re Sassounian* (1995) 9 Cal.4th 535, 545, fn. 7, citing *United States v. Bagley* (1985) 473 U.S. 667, 678 [87 L.Ed.2d 481].)

The Attorney General contends there was no *Brady* violation because appellant was given the police report which referenced a "DICV." Defense counsel stated that DICV, which stands for digital in-car video, is new technology and new terminology. The acronym was not identified in the arrest report. Defense counsel said: "I never heard of it before. I simply didn't

5

know."  It is reasonable to assume that appellant did not know what DICV meant when he represented himself in the first trial.  The prosecutor conceded that the DICV reference in the police report "is something we both missed."

The police report summarizes the *Miranda* interrogation but does not say it was recorded.  The DICV acronym appears in a section of the report entitled "**Photographs, DICV, Audio, Digital Imaging**," but that section only states the officers took photos inside the house.  The last page of the arrest report states "DICV was activated during the initial detention of suspect . . . (Placed in back seat of Patrol Vehicle) and transportation to the station and 77th Jail."  The report does not say the DICV was activated when appellant was interrogated.

The cryptic reference to DICV in the police report did not relieve the prosecution of the duty to provide appellant a copy of the video recording before the first trial.  (*Kasim*, *supra*, 56 Cal.App.4th at p. 1380 [prosecution must disclose evidence that is in constructive possession or reasonably accessible to the prosecution].)  *Brady* imposes a duty on prosecutors to volunteer *Brady* material to the defendant even if no request is made.  (*United States v. Agurs* (1976) 427 U.S. 97, 107; *People v. Verdugo* (2010) 50 Cal.4th 263, 279 (*Verdugo*); *Salazar*, *supra*, 35 Cal.4th at p. 1042.)  The Attorney General cites no authority, and we have found none, that *Brady* error is waived by defendant's failure to object.  The trial court found that the failure to object on *Miranda* grounds waived the *Brady* error.  Failure to object is not relevant to a *Brady* analysis.  The *Brady* obligation is self executing.  There need be no motion, request, or objection to

6

trigger disclosure. The prosecution has a sua sponte duty to provide *Brady* information.

*Count 4*

Without appellant's confession, the prosecution was unable to secure convictions on counts 2 and 3 which were intertwined with the criminal threats charge in count 4. It takes no leap in logic to conclude that appellant suffered prejudice because of the non-disclosure as to count 4. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. . . . [¶] . . . [*I*]*t is not a sufficiency of evidence test.* A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." (*Kyles v. Whitley* (1995) 514 U.S. 419, 434, (*Kyles*) italics added.)

On count 4 the jury had problems with Moore's credibility. It asked for a reread of Moore's testimony and the officer's testimony. The video recording, had it been produced prior to trial and excluded, would have undermined the prosecution's case on count 4. "One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." (*Kyles, supra*, 524 U.S. at p. 435.)

The Attorney General argues that appellant was not prejudiced by the *Brady* error. We disagree. The video recording went to the heart of the case on count 4. Confessions are the most damaging type of evidence in a criminal trial and "'often

7

operate "as a kind of evidentiary bombshell which shatters the defense.'" [Citation.]" (*People v. Gonzalez* (2012) 210 Cal.App.4th 875, 884.)  The prosecution relied on appellant's confession and the victim's testimony to prove count 4.  Even with appellant's confession, the prosecution did not convict on counts 2 and 3.

When appellant's confession was excluded in the second trial, the jury discredited Moore's testimony in its entirety and acquitted on counts 2 and 3.  We conclude that the *Brady* error materially affected the outcome as to count 4 of the first trial.  We must reverse on count 4.

*Count 1*

As to count 1, felon in possession of a firearm, we reach a different conclusion.  Appellant twice factually admitted to the jury that he was a felon in possession of a firearm.  There was, and is, no reason to discredit these factual admissions even though they were made in opening statement and closing argument.  In this court appellant claims that he would not have made these admissions if the *Brady* information had been disclosed prior to the first trial.  This is speculation and not supported by the record.  At no time below did appellant declare or testify that he would not have made these admissions had the prosecution provided the *Brady* evidence.  Moreover, these admissions may have been a legitimate trial tactic that worked to his advantage.  Appellant is not permitted to redesign trial tactics on appeal with benefit of hindsight.  "Our courts are not gambling halls but forums for the . . . truth." (*People v. St. Martin* (1970) 1 Cal.3d 524, 533.)  Were we to credit appellant's claim, we would, in essence, have to say that *Brady* error is "structural" requiring automatic reversal.  No published opinion has so held.

We are mindful and aware "of the difficulty of reconstructing . . . the course that the defense and the trial would have taken" (*United States v. Bagley, supra*, 473 U.S. at p. 683) had the *Brady* material been timely provided. It is true that a *Brady* violation can impact "'defense investigations and trial strategies . . . .'" (*Verdugo, supra*, 50 Cal.4th at p. 279.) As indicated, it remains speculative that he would not have made his admissions had he been timely given the *Brady* material. He candidly told the trial court and the jury that this firearm was his and it worked to his advantage.

*Waiver of Rights on Prior Strike Enhancement*

Appellant argues, and the Attorney General concedes, that the trial court did not advise appellant of his constitutional rights when appellant admitted the prior strike/prior serious felony conviction enhancements. (*In re Yurko* (1974) 10 Cal.3d 857, 863-864; *Boykin v. Alabama* (1969) 395 U.S. 238, 242.) We reverse and remand for retrial on the prior strike enhancement on count 1. (*People v. Barragan* (2004) 32 Cal.4th 236, 241; *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1421.) We opine no further on other alleged sentencing deficiencies because we vacate the entire sentence on remand. The trial court will revisit these issues.

*Presentence Custody Credits*

Appellant finally contends that the trial court miscalculated his presentence custody credits and conduct credits. We do not reach the issue because we are vacating the sentence and remanding for new trial on count 4 and a new trial on the count 1 prior-strike enhancement. On remand, the trial court will have the opportunity to recalculate the presentence custody credits.

9

*Disposition*

The judgment of conviction on count 4 is reversed and remanded for new trial.  The judgment of conviction on count 1 is affirmed but the sentence is vacated and a new sentencing hearing is ordered.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

10

Craig E. Veals, Judge

Superior Court County of Los Angeles

_____

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.