Filed 10/15/25  P. v. Hartman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083719 |
| v. | (Super.Ct.No. BAF1801107) |
| ROBERT HENRY HARTMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Valerie Navarro, Judge.

Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney

General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and

Namita Patel, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant Robert Henry Hartman was convicted of two counts of committing a lewd and lascivious act upon a person fourteen years of age (Pen. Code,[1] § 288, subd. (c)(1)) as the result of two incidents in which he touched M.D., a friend of his girlfriend's daughter. He was sentenced to a term of two years in state prison.

On appeal, defendant argues the judgment should be reversed because: (1) the trial court erred by excluding evidence related to M.D.'s mental health treatment at the time of the alleged offenses; (2) the trial court erred by excluding evidence of M.D.'s interview with police; and (3) the trial court erred by denying a motion to dismiss or motion for new trial based upon newly discovered evidence. We disagree with each of these contentions and affirm the judgment.

## II. BACKGROUND

In July 2018, M.D. reported she was inappropriately touched by defendant while visiting a friend's home for a sleepover. As a result of M.D.'s allegations, defendant was charged with two counts of committing a lewd and lascivious act upon a person fourteen years of age (§ 288, subd. (c)(1)).

M.D. testified that, in July 2018, she went to a friend's home for a sleepover. She was fourteen years old at the time. At some point in the evening, defendant arrived at the home. M.D. believed defendant was in a romantic relationship with her friend's mother at the time.

---

[1] Undesignated statutory references are to the Penal Code.

2

After her friend's mother went to bed, M.D. testified she experienced two encounters with defendant. In the first encounter, defendant put his hand up M.D.'s shirt and fondled M.D.'s breasts for approximately one or two minutes. In the second encounter, defendant placed his hand into M.D.'s pants and underwear, placing his fingers on M.D.'s vagina for approximately ten minutes. M.D. did not yell or scream because she was scared, but she attempted to grab defendant's hand and pull it away from her. M.D. also testified that, at some point, defendant propositioned her by asking if she wanted to know what it would feel like to have sex with a man.

Later in the night, M.D. told her friend and her friend's mother about the encounters with defendant. Her friend's mother called M.D.'s grandmother,[2] who then reported the incident to police. Police arrived at the home and took a statement from M.D. The following morning, M.D. went to the hospital to submit to a sexual assault response team (SART) examination. However, M.D. ultimately refused to submit to a physical examination because she did not want anyone to touch her. She agreed only to permit a medical professional to obtain a DNA swab. A comparison of the DNA swab with swabs taken from defendant's hand were inconclusive.

A jury convicted defendant on both charges. The trial court sentenced defendant to the middle term of two years on count 1 and a concurrent middle term of two years on count 2.

---

[2] M.D. testified that she had been raised by her grandparents since infancy and was formally adopted by her grandparents when she was 12 years old.

3

## III.  DISCUSSION

### A. *The Trial Court Did Not Err in Its Evidentiary Rulings*

We first address defendant's claims of error with respect to the trial court's evidentiary rulings.  Specifically, defendant claims the trial court erred by (1) excluding evidence related to M.D.'s mental health treatment, and (2) excluding evidence of statements made by M.D. in her initial interview with law enforcement.  "Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence."  (*People v. Waidla* (2000) 22 Cal.4th 690, 717; *People v. Flores* (2024) 101 Cal.App.5th 438, 449.)  " 'Specifically, we will not disturb the trial court's ruling "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*Flores*, p. 449.)  As we explain, we find no abuse of discretion in the record before us.

#### 1.  Exclusion of Evidence Related to M.D.'s Mental Health Treatment

Defendant argues that the trial court erred by excluding evidence of M.D.'s mental health treatment.  Specifically, defendant claims he was prevented from inquiring about the following topics during cross-examination:  (1) the fact M.D. was receiving therapy at the time of the alleged offenses; (2) the reasons for M.D.'s seeking therapy; (3) the medications M.D. was taking to address her mental health issues; and (4) the impact of M.D.'s strained relationship with her biological mother on M.D.'s mental health.  According to defendant, inquiry into M.D.'s mental health treatment was relevant to challenge M.D.'s credibility as a witness.  We disagree.

4

In *People v. Anderson* (2001) 25 Cal.4th 543, our Supreme Court explicitly rejected the relevance argument advanced by defendant in this appeal, explaining: "[i]t is a fact of modern life that many people experience emotional problems, undergo therapy, and take medications for their conditions. 'A person's credibility is not in question merely because he or she is receiving treatment for a mental health problem.' " (*Ibid.*) Thus, contrary to defendant's argument, the fact that M.D. was undergoing therapy at the time of the incidents giving rise to the charged offenses does not, on its own, render evidence of M.D.'s mental health status or treatment relevant to the issue of credibility.

Instead, " 'mental illness or emotional instability of a witness can be relevant on the issue of credibility . . . if such illness affects the witness's ability to perceive, recall or describe the events in question.' " (*People v. Baugh* (2024) 107 Cal.App.5th 739, 751.) Other than suggesting that M.D.'s mental health treatment suggested she was more emotionally volatile at the time of the alleged incidents, defendant has not pointed to any evidence in the record to suggest that M.D. suffered from a condition that would impact her ability to perceive, recall, or describe the events in question. There is no evidence to suggest any connection between receiving therapy as a result of a strained relationship with her mother and the alleged conduct. Moreover, there is no evidence that M.D.'s ability to perceive and recollect defendant's conduct was impaired in any significant way.

Even if marginally relevant, we cannot conclude that the exclusion of such evidence was an abuse of discretion. In this case, the relevance of the purported evidence rested on multiple speculative inferences. Defendant sought to introduce evidence of M.D.'s mental health treatment because it suggested M.D. *might* be emotionally volatile

5

and that such hypothetical emotional volatility *might* have motivated M.D. to fabricate her allegations. However, " ' "[e]xclusion of evidence that produces only speculative inferences is not an abuse of discretion." ' " (*People v. Daniels* (2009) 176 Cal.App.4th 304, 320.) And courts have upheld the exclusion of similar evidence on the grounds that it would merely invite the jury to engage in speculation. (See *Daniels*, at p. 321 [expert testimony that victim might have experienced an alcoholic blackout properly excluded as too speculative where the victim unequivocally testified she recalled the events in question]; *People v. Dworak* (2021) 11 Cal.5th 881, 896 [evidence of victim's prior drug-use and alleged promiscuity properly excluded because it would only invite jury to speculate as to events to which no witnesses testified].)

Thus, the record suggests that the evidence of M.D.'s therapeutic treatment had little or no relevance and would risk confusing or misleading the jury to inviting them to engage in speculation. Under such circumstances, the trial court did not abuse its discretion in excluding such evidence.

2. Exclusion of Evidence Related to M.D.'s Prior Statements to Police

Defendant also argues the trial court erred by excluding evidence of M.D.'s prior statements to police. Defendant argues that such evidence was relevant for impeachment. Again, we find no abuse of discretion in the trial court's decision to exclude this evidence.

a. *Additional Relevant Background*

In arguing the trial court abused its discretion, defendant omits key context regarding the testimony he sought to elicit. Specifically, the relevant line of questioning

6

began with defense counsel's attempt to ask M.D. whether she recalled telling the district attorney that her friend's mother previously stated that "it was [M.D.'s] fault because [M.D.] wanted it to happen." In response, M.D. testified, "I don't remember that." In response, defense counsel requested permission to approach M.D. with the transcript of her prior interview with law enforcement.

The prosecutor objected to introduction of the transcript as hearsay. Defense counsel responded by stating that he wished to introduce the transcript as evidence of a prior inconsistent statement and to refresh M.D.'s recollection. The trial court then inquired: "What is the question under what you're trying to refresh the memory of?" Defense counsel explained: "What [M.D.] told [the investigator] about what [her friend's mother] told [M.D.]." As a result, the trial court excluded the evidence concluding it was hearsay and also that "[i]t's improper impeachment at this point in refreshing recollection."

b. *Analysis*

When viewed in context, we conclude the trial court did not abuse its discretion in excluding evidence of M.D.'s prior statements to investigators. Generally, "[h]earsay is 'evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.' " (*People v. Davis* (2005) 36 Cal.4th 510, 535; Evid. Code, §1200, subd. (a).) "Hearsay is not admissible unless it qualifies under some exception to the hearsay rule." (*Davis*, at p. 535.) Here, the prior statements by M.D. that defendant sought to introduce consisted of M.D.'s recounting statements previously made by her friend's mother. Thus, the evidence at

7

issue consisted of out-of-court statements made by an individual who was not testifying as a witness at the time, and its admissibility turns on whether such evidence could serve "some purpose independent of the truth of the matters it asserts." (*People v. Hopson* (2017) 3 Cal.5th 424, 432.)

The only purpose for which defendant sought to admit M.D.'s prior statements was to show M.D. had purportedly made prior inconsistent statements to impeach M.D.'s credibility. However, when she was asked on the stand whether she recalled telling investigators about the accusations previously made by her friend's mother, M.D. testified that she did not recall. " 'Normally, the testimony of a witness that he or she does not remember an event is not inconsistent with that witness's prior statement describing the event.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 711; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 78; *People v. Johnson* (1992) 3 Cal.4th 1183, 1219.)[3] Thus, the statements that defendant sought to introduce at trial could not have served the purpose for which defendant claims. Where defendant cannot identify a non-hearsay purpose for introducing evidence of an out-of-court statement made by a non-

---

[3] An exception to this rule exists "[w]hen a witness's claim of lack of memory amounts to deliberate evasion, inconsistency is implied." (*Johnson*, *supra*, 3 Cal.4th 1183 at p. 1219.) But, as our Supreme Court has explained, because the "trial court [has] the opportunity to view [the witness's] demeanor," the trial court is generally "in the best position to assess the credibility of [the witness's] claimed nonrecollection." (*Coffman and Marlow*, *supra*, 34 Cal.4th at p. 78.) And defendant did not assert M.D. was being deliberately evasive when the trial court inquired about the purpose for which he sought to offer M.D.'s prior statements to investigators. Moreover, the trial court made no such finding.

testifying witness, the trial court does not abuse its discretion in excluding such evidence on hearsay grounds.

Additionally, the trial court did not abuse its discretion when it concluded that the transcripts could not be used to refresh M.D.'s recollection of prior statements for the ultimate purpose of showing that those prior statements were inconsistent. A defendant does not have a right to impeach a witness on a collateral matter. (*People v. Contreras* (2013) 58 Cal.4th 123, 154.) In such instances, the trial court retains discretion to "exclude evidence of marginal impeachment value that would entail the undue consumption of time." (*People v. Brown* (2003) 31 Cal.4th 518, 545.) Here, the underlying fact that the friend's mother accused M.D. of wanting the sexual abuse to happen is clearly collateral to the case. The friend's mother was not identified as a percipient witness to any of the alleged acts of abuse, and the fact that she previously stated that M.D. "wanted it to happen" has no tendency to prove whether the acts of abuse actually occurred. Thus, even if M.D. made inconsistent statements about whether she recalled her friend's mother making such an accusation, the only purpose for such evidence would be to impeach M.D. on an entirely collateral issue. Under the circumstances, the trial court was well within its discretion to exclude such evidence.

Because we have concluded that the trial court did not err in excluding the evidence identified by defendant on appeal, we need not discuss the parties' related arguments regarding prejudice.

B. *The Trial Court Did Not Err in Denying Defendant's Post Trial Motions*

Defendant also claims the trial court erred when it denied three post-trial motions.

9

Specifically, defendant filed: (1) a motion to dismiss on the ground that the prosecution failed to disclose the medical records related to M.D.'s hospital visit in violation of *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*); (2) a motion to dismiss on the ground that law enforcement officers failed to preserve evidence by failing to ensure that M.D. submitted to a SART exam at the hospital in violation of *California v. Trombetta* (1984) 467 U.S. 479 (*Trombetta*); and (3) a motion for new trial on the basis that the medical records related to M.D.'s hospital visit constituted newly discovered evidence under section 1181. As we explain, we find no error in the trial court's denial of defendant's request for posttrial relief on these grounds.

    1. Additional Procedural Background

On November 8, 2023, defendant issued a subpoena to Queen of the Valley Hospital for medical records pertaining to M.D.

On November 9, 2023, all parties announced ready for trial; a jury panel was sworn; and the parties began jury voir dire.

On November 13, 2023, defendant filed a motion seeking an order from the trial court to release the records obtained in response to his third-party subpoena to the hospital after conducting an in-camera review.

Sometime during the course of trial, the hospital produced records in response to defendant's subpoena.[4] The records contained a note indicating that, at the time of

---

[4] The record on appeal does not disclose the exact date of disclosure, but the certification signed by the custodian of records was dated November 15, 2023.

10

M.D.'s hospital visit, a law enforcement officer told the SART nurse that, "since there is no penetration with the incident, [M.D.] can be swabbed at a later date and [M.D.] does not need SART team at this time."

On November 27, 2023, the trial court informed defense counsel that the hospital records had been delivered to the wrong courthouse; the mistake could delay the court's ability to conduct an in camera review and rule on defendant's motion to release the records; and asked counsel how he would like to proceed. In response, defense counsel stated: "At this point, I don't think there's anything that I would not feel confident with just going forward."

On November 29, 2023, the parties began closing argument, and the matter was submitted to the jury on November 30. After the jury returned its verdict, defense counsel requested the trial court rule on defendant's motion to release the subpoenaed records, and the trial court granted the request to release the hospital records after conducting a brief in-camera review.

2. The Record Does Not Disclose a *Brady* Violation

In his motion and on appeal, defendant contends that he was entitled to dismissal because the prosecution committed a *Brady* violation by failing to disclose the records related to M.D.'s hospital visit. We disagree.

"Pursuant to [*Brady*], and its progeny, the prosecution has a duty to disclose to the defense material exculpatory evidence, including potential impeaching evidence." (*People v. Harrison* (2017) 16 Cal.App.5th 704, 709.) " 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either

11

because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' " (*People v. Salazar* (2005) 35 Cal.4th 1031, 1042-1043; *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 176.)  The question of whether a *Brady* violation has occurred is subject to our independent review on appeal.  (*Salazar*, at p. 1042.)

An essential element of establishing a *Brady* violation is that the identified evidence was "suppressed."  As explained by the California Supreme Court:  " 'Because *Brady* and its progeny serve "to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery," the *Brady* rule does not displace the adversary system as the primary means by which truth is uncovered. [Citation.]  Consequently, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is [the defendant's] lack of reasonable diligence, the defendant has no *Brady* claim." ' " (*People v. Williams* (2013) 58 Cal.4th 197, 257; *Salazar*, *supra*, 35 Cal.4th at pp. 1048-1049 ["[E]vidence is not suppressed unless the defendant was actually unaware of it and could not have discovered it ' "by the exercise of reasonable diligence." ' "]; *People v. Superior Court* (*Johnson*) (2015) 61 Cal.4th 696, 716 [" '[I]f the means of obtaining the exculpatory evidence has been provided to the defense, the *Brady* claim fails.' "].)

Here, defendant subpoenaed the medical records in question prior to the start of trial, and filed a motion with the trial court to release those records.  Additionally, in support of defendant's motion to dismiss, defense counsel conceded that the purpose of subpoenaing the records was "in case some impeachment arose" if a witness "testified

12

inconsistently with the previous representations." Finally, while evidence was still being presented to the jury, the trial court expressly informed defense counsel that the subpoenaed records had been produced and could be made available, but defense counsel elected to continue with trial without first seeking a short continuance to review the records. Thus, the record on appeal establishes that at the time of trial, (1) defendant was aware of the existence of the evidence in question; (2) defendant was aware of its potential impeachment value; (3) the evidence was available to all parties; and (4) defendant had the opportunity to review the evidence and decide whether to present the evidence as part of his defense prior to submission of the case to the jury. Under these circumstances, the evidence cannot be considered "suppressed" within the meaning of *Brady*.

Because defendant has not established suppression as a necessary element of a *Brady* violation, we need not consider defendant's additional arguments that the hospital records contained exculpatory evidence or that the evidence was material, such that any purported suppression was prejudicial. Absent a *Brady* violation, the trial court did not err in declining to dismiss the case on this ground.

3. The Record Does Not Disclose a *Trombetta* Violation

Defendant also argues that a *Trombetta* violation occurred because law enforcement "failed to preserve or obtain DNA or other physical evidence, and dissuaded M.D. from undergoing a SART examination that could have proven [defendant's] innocence." Again, we disagree.

Under *Trombetta*, the United States Supreme Court held that "[t]he federal

13

constitutional guarantee of due process imposes a duty on the state to preserve 'evidence that might be expected to play a significant role in the suspect's defense.' " (*People v. Montes* (2014) 58 Cal.4th 809, 837.) "To establish a violation of [a defendant's] rights under *Trombetta*, it must be shown both that evidence with an exculpatory value apparent on its face was destroyed and that defendant could not obtain comparable evidence by any other means." (*People v. Thomas* (2012) 54 Cal.4th 908, 929.) If the exculpatory value of evidence cannot be determined on its face, then the defendant must make an additional showing that the state acted in bad faith when failing to preserve the evidence. (*People v. Duff* (2014) 58 Cal.4th 527, 549 ["If . . . 'no more can be said [of the evidence] than that it *could have* been subjected to tests, the results of which *might have* exonerated the defendant' . . . ; 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' "]; *People v. Flores* (2020) 9 Cal.5th 371, 395 [same].) An appellate court reviews the trial court's ruling on a *Trombetta* claim for substantial evidence. (*People v. Memro* (1995) 11 Cal.4th 786, 831; *Montes*, at p. 837; *Duff*, at p. 549.)

In this case, it was undisputed that a SART exam was never conducted. As such, it is not possible to determine what a completed SART examination might have shown; the exculpatory value of the evidence cannot be considered apparent on its face; and defendant was required to establish bad faith on the part of police in order to show a *Trombetta* violation. But the trial court determined that defendant had failed to show bad faith, and substantial evidence in the record supports this finding.

Specifically, M.D. testified that she refused to submit to the SART examination

14

because she did not want anyone to touch her; that the only other person present in the examination room was a nurse at the time she refused to submit to the exam; and that she did not recall ever speaking with law enforcement about the case other than her initial statement and a recorded interview taken months later. Based upon this evidence, the trial court could reasonably infer that the failure to complete a SART examination was not caused by law enforcement but by a decision made independently by M.D.

Additionally, the note in the medical records stated that "police urgent [sic] stated that, since there is no penetration with the incident, [M.D.] can be swabbed at a later date and that she does not need SART team at this time." And it was undisputed at trial that the police actually completed the alternative method for collection of DNA samples from defendant's hands in order to conduct tests to determine whether any material on his hands would match that of M.D. Thus, the trial court could also reasonably infer that any involvement by law enforcement was not motivated by a desire to withhold potentially exculpatory evidence but motivated by the belief that a SART exam would have been unnecessarily duplicative.

Finally, it was undisputed at trial that the DNA collection and testing was inconclusive and failed to corroborate M.D.'s testimony regarding defendant's actions. Given these circumstances, an additional SART examination would either have been inculpatory or merely equally inconclusive. Thus, the trial court could reasonably conclude that defendant actually obtained comparable evidence in this case— a scientific test that failed to corroborate M.D.'s testimony.

Where the record contains evidence upon which the trial court could rely to

15

conclude that police did not act in bad faith and that defendant actually obtained and presented comparable evidence at trial, substantial evidence supports the trial court's finding that there was no *Trombetta* violation. And where substantial evidence supports the trial court's findings, reversal is not warranted on appeal.

4. Denial of the Motion for New Trial Was Not an Abuse of Discretion

Finally, defendant argues the trial court should have granted his request for a new trial because the hospital records constituted newly discovered evidence. We disagree.

Section 1181 permits the trial court to grant a new trial based upon newly discovered evidence. (§ 1181.) " 'In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: " '(1) That the evidence, and not merely its materiality, be newly discovered; (2) That the evidence be not cumulative merely; (3) That it be such as to render a different result probable on a retrial of the cause; (4) That the party could not with reasonable diligence have discovered and produced it at the trial; and (5) That these facts be shown by the best evidence of which the case admits.' " ' " (*People v. Howard* (2010) 51 Cal.4th 15, 43.) We review the trial court's denial of a motion for new trial for abuse of discretion. (*Ibid.*)

As we have already discussed in relation to defendant's *Brady* claim, the hospital records at issue could have been discovered and produced with reasonable diligence at the time of trial. Indeed, the record shows that defense counsel was already aware that: the hospital records existed; the records might possess potential value as impeachment evidence; and the documents had already been produced to the trial court in response to defendant's subpoena. Additionally, the trial court expressly informed defense counsel

16

that the records had been produced with sufficient time for counsel to request a short continuance to review the records if he desired to do so.

Given this record, the hospital records did not meet the definition of "newly discovered" within the meaning of section 1181. (*People v. Perez* (2020) 47 Cal.App.5th 994, 999 [Newly discovered evidence is evidence "*discovered after trial or judgment, and that with reasonable diligence could not have been discovered* earlier."].) And where defendant fails to identify newly discovered evidence, the trial court does not abuse its discretion in denying a motion for new trial on this ground.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS            
J.

We concur:


RAMIREZ         
          P. J.


RAPHAEL         
          J.